IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADVANCED REIMBURSEMENT MANAGEMENT, LLC D/B/A ADREIMA, <br><br> Plaintiff, <br><br> v. <br><br> CLAY PLAISANCE, TKC WORKS, LLC F/K/A HCR HEALTHCARE RESOURCES, L.L.C., AND TKC PLAISANCE, LLC F/K/A PINNACLE HEALTHCARE GROUP OF LOUSIANA, LLC, <br><br> Defendants. | C.A. No. 17-667 (MN) |

**MEMORANDUM OPINION**

Carl D. Neff, Kasey H. DeSantis, FOX ROTHSCHILD LLP, Wilmington, DE – Attorneys for Plaintiff

Joanna J. Cline, Christopher B. Chuff, PEPPER HAMILTON LLP, Wilmington, DE – Attorneys for Defendant

June 17, 2019
Wilmington, Delaware

*signature: Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is the motion (D.I. 29) of Defendants Clay Plaisance, TKC Works, LLC f/k/a HCR Healthcare Resources, L.L.C., and TKC Plaisance, LLC f/k/a Pinnacle Healthcare Group of Louisiana, LLC (collectively, "Defendants"), pursuant to 28 U.S.C. § 1404(a), to transfer this case to the Western District of Louisiana. Plaintiff Advanced Reimbursement Management, LLC d/b/a Adreima ("Plaintiff") opposes transfer. (D.I. 38). For the reasons set forth below, Defendants' motion to transfer will be denied.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a Delaware limited liability company with a principal place of business in Georgia and is "in the business of accounts receivable and revenue cycle management." (D.I. 59 ¶¶ 1-2). Defendant Plaisance is a resident of Louisiana and worked as a consultant to Plaintiff from 2015 to 2017. (*Id.* ¶ 3). Defendants TKC Works, LLC and TKC Plaisance, LLC are Louisiana limited liability companies and are headquartered in Louisiana. (*Id.* ¶ 4-5).

In 2014, Plaintiff approached Defendant Plaisance about purchasing the assets of HCR HealthCare Resources, L.L.C. and Pinnacle Healthcare Group of Louisiana, LLC (collectively, "HCR"). (*Id.* ¶ 13). In 2015, Plaintiff and HCR entered into an Asset Purchase Agreement, in which HCR "sold all or substantially all of their assets to [Plaintiff]."[1] (D.I. 30 at 4). In connection with the Asset Purchase Agreement, Plaintiff also entered into a Restrictive Covenant Agreement with HCR and Defendant Plaisance, a Goodwill Purchase Agreement with Defendant Plaisance, and a Consulting Agreement with CGP Management, LLC, "an entity in which [Defendant] Plaisance is a member and manager of." (*Id.*).

---

[1]     Following the execution of the Asset Purchase Agreement, HCR HealthCare Resources, L.L.C. and Pinnacle Healthcare Group of Louisiana, LLC changed their names to TKC Works, LLC and TKC Plaisance, LLC, respectively. (D.I. 30 at 3).

The Restrictive Covenant Agreement, Goodwill Purchase Agreement, and Consulting Agreement each contained non-competition and non-solicitation provisions that prohibited Defendants from competing with Plaintiff and soliciting Plaintiffs' employees. (D.I. 38 at 4-5; *see also* D.I. 59 ¶¶ 15-19, 22-24, 27-31). The parties' agreements also contained choice-of-law clauses, in which the parties agreed that Delaware law would govern. (D.I. 38 at 5-6; *see also* D.I. 59, Ex. A ¶ 10.12, Ex. B ¶ 5.9, Ex. C ¶ 5.9, Ex. D ¶ 14(h)). Furthermore, the Asset Purchase Agreement and Consulting Agreement contained forum-selection clauses that provided that any legal disputes arising from the agreements must be brought in a Delaware state or federal court. (D.I. 38 at 5-6; *see also* D.I. 59, Ex. A ¶ 10.13, Ex. D ¶ 14(h)).

On June 1, 2017, Plaintiff filed this action, alleging that Defendants breached the non-competition and non-solicitation provisions of the parties' various agreements. (D.I. 59 ¶¶ 6-7). Following the execution of the parties' agreements, Plaintiff alleges that, in 2017, Defendants began "tak[ing] substantial steps to compete with [Plaintiff], as well as solicit employees from [Plaintiff]." (*Id.* ¶ 34). Specifically, Plaintiff alleges that Defendants "form[ed] a new company to compete with [Plaintiff], Avail Revenue Solutions." (*Id.* ¶ 35). Plaintiff also alleges that Defendants "have solicited and hired former employees of [Plaintiff] to work at or for Avail Revenue Solutions." (*Id.* ¶ 36). On August 16, 2017, Defendants moved to dismiss or transfer this action for lack of personal jurisdiction and improper venue. (D.I. 12). On September 8, 2017, after finding venue to be improper in the District of Delaware under 28 U.S.C. § 1391(b), the court granted Defendants' motion and transferred this action to the Western District of Louisiana, Lafayette Division. (D.I. 23). On October 5, 2017, Plaintiff filed a Petition for Writ of Mandamus with the U.S. Court of Appeals for the Third Circuit. (D.I. 38 at 2).

On July 31, 2018, the Third Circuit granted Plaintiff's petition and issued a Writ of Mandamus, vacating the court's order that transferred the case to the Western District of Louisiana. (D.I. 44, Ex. A at 2). The Third Circuit determined that the parties' forum-selection clause provided a basis for venue in the District of Delaware. (*Id.*). Moreover, the Third Circuit specified that "[a]bsent a determination that Defendants have met their burden of showing . . . that [the] public interest factors overwhelmingly disfavor the preselected forum under a § 1404(a) transfer analysis, the parties' settled expectations as embodied in the forum-selection clause should not be disrupted." (*Id.* (internal footnotes omitted)). Following the Third Circuit's order, the case was reopened in this court on October 2, 2018. On October 17, 2018, the case was reassigned to the undersigned judge. Defendants filed the instant motion on November 9, 2018. (D.I. 29).

## II. LEGAL STANDARD

District courts have the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, "[a] plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses,'" *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)), and this choice "should not be lightly disturbed," *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

The Third Circuit has recognized that:

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Jumara*, 55 F.3d at 879 (citation omitted). The *Jumara* court went on to describe twelve (12) "private and public interests protected by the language of § 1404(a)." *Id.* The private interests include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (citations omitted). The public interests include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.

The party seeking transfer bears the burden "to establish that a balancing of proper interests weigh[s] in favor of transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Moreover, though courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer," *Jumara*, 55 F.3d at 883, the Third Circuit has held that "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25.

In cases where "parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Atl. Marine Const. Co. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 66 (2013). Thus, "district courts [must] adjust their usual § 1404(a) analysis in three ways." *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (quoting *Atl. Marine*, 571 U.S. at 63) (internal quotation marks

omitted) (alteration in original). First, district courts "must give no weight to the forum preferred by 'the party defying the forum-selection clause.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 63). Second, district courts "must deem the private interests to 'weigh entirely in favor of the preselected forum' because the parties agreed to the preselected forum and thereby waived the right to challenge it as inconvenient." *Id.* Third, district courts "must proceed to analyze only public interests." *Id.* In weighing the factors, district courts may not disrupt parties' "settled expectations" unless a court finds that the public interest factors "overwhelmingly weigh against enforcing the [forum-selection] clause[]." *Id.* at 409 (internal quotation marks and citation omitted).

## III. ANALYSIS

As an initial matter, there is no question that this case could have originally been brought in the Western District of Louisiana. When defendants are all residents of the same state, "[a] civil action may be brought in[] [] a judicial district in which any defendant resides." 28 U.S.C. § 1391(b)(1). Here, Defendants all reside in Lafayette, Louisiana, which is within the Western District. (D.I. 59 ¶¶ 3-5). Thus, this case could have originally been brought in the Western District of Louisiana.

The Court will now consider whether to exercise discretion under § 1404(a) to transfer this case to that district. As discussed above, in remanding this case, the Third Circuit noted that the case should remain in Delaware, per the parties' forum-selection clauses, unless the "public interest factors overwhelmingly disfavor [Delaware] under a § 1404(a) analysis." (D.I. 44, Ex. A at 2). Thus, the Court will find that *Jumara*'s private factors "weigh entirely in favor of" the District of Delaware, *see Atl. Marine*, 571 U.S. at 64, and consider only the public factors in connection with the transfer inquiry.

5

1. Enforceability of the judgment

Neither Plaintiff nor Defendants address any disparity between the enforceability of the judgment between the District of Delaware and the Western District of Louisiana in their papers, and thus the Court finds this factor to be neutral.

2. Practical considerations

This factor is neutral. The Court must consider "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Here, Defendants argue that such considerations "favor transfer because nearly all of the relevant witnesses and evidence is located in Louisiana." (D.I. 30 at 20). Further, Defendants note that the "relevant facts took place in Louisiana" and that "all of the relevant third party witnesses are located in Louisiana and cannot be compelled to appear at trial here." (*Id.*). Plaintiff responds by asserting that the "considerations set forth by Defendants pertain to private interests, which the Third Circuit has determined are not properly considered under these circumstances." (D.I. 38 at 18).

The Court agrees with Plaintiff and finds that the considerations Defendants propose mirror the private interest factors, which the Court cannot consider in this transfer inquiry because of the parties' forum-selection clause. *See In re Howmedica*, 867 F.3d at 402. Neither party addresses any broader public benefit to this case proceeding in this Court versus the Western District of Louisiana. Thus, this factor is neutral. *W.R. Berkley Corp. v. Niemela*, No. 17-32 (GMS), 2017 WL 4081871, at *4 (D. Del. Sept. 15, 2017) (finding factor to be neutral when "neither party addresse[d] the broader public costs of proceeding in one district or the other").

### 3. Relative administrative difficulty due to court congestion

This factor is neutral. The Court takes judicial notice of the most recent Judicial Caseload Profiles,[2] as of December 31, 2018, which indicate that the District of Delaware has 596 cases pending per judgeship while the Western District of Louisiana has 316 cases pending per judgeship. The December 31, 2018 profile also indicates that the median time between filing and trial for civil cases is 28.7 months in the District of Delaware and 28 months in the Western District of Louisiana.

Although "[t]his District's large caseload has not, in the past, been a sufficient justification for transfer[,] . . . increased times from filing to . . . trial [is an] important factor[] that do[es] influence the court's calculus." *W.R. Berkley*, 2017 WL 4081871, at *5 (citing *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 759-60 (D. Del. 2012)). The Court finds the difference between the two districts' median times between filing and trial to be insignificant, and thus, this factor is neutral.

### 4. Local interest in deciding local controversies at home

This factor is neutral. Defendants argue that Louisiana "has the strongest interest in this dispute" because "all of the facts giving rise to this suit occurred there." (D.I. 30 at 11). In response, Plaintiff contends that Defendants ignore that Plaintiff is a Delaware entity and that "Delaware has a strong interest in adjudicating disputes among its corporate citizens." (D.I. 38 at 11 (quoting *Intellectual Ventures I*, 842 F. Supp. 2d at 760 (internal quotation marks omitted)).

This Court has previously acknowledged that Delaware's interest in cases involving only one Delaware entity "is not necessarily as strong as it would be in litigation solely among Delaware

---

[2] The December 2018 statistics for the District Courts of the United States can be found at: https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2018.pdf.

7

corporations." *Calamos Asset Mgmt., Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 18-1510 (MN), 2019 WL 2117647, at *5 (D. Del. May 15, 2019) (quoting *Harris v. Lord & Taylor LLC*, No. 18-521 (MN), 2019 WL 1854562, at *5 (D. Del. Apr. 25, 2019) (internal quotation marks omitted)). Nonetheless, although this case involves only one Delaware entity, the Court finds that the existence of the parties' choice-of-law clauses provides Delaware with a "substantial interest" in the parties' dispute. *Coface Collections N. Am. Inc. v. Newton*, 430 F. App'x 162, 168 (3d Cir. 2011) ("Delaware has a substantial interest in enforcing this voluntarily negotiated contract clause that explicitly designates Delaware law to govern.").

As for Louisiana, the Court agrees with Defendants that Louisiana has an interest in the dispute because it is where Defendants reside and where facts giving rise to the parties' dispute occurred. But, given that Plaintiff is headquartered in Georgia and operates nationally (*see* D.I. 38 at 3), this case is not a "local controversy" in the Western District of Louisiana, such that Louisiana's interest is stronger than Delaware's interest. *See Calamos*, 2019 WL 2117647, at *5 (finding a local controversy did not exist in the proposed transferee district when both parties did not reside there). Therefore, given the competing interests of this district and the Western District of Louisiana, the Court finds this factor to be neutral.

### 5. Public policies of the fora

This factor is neutral. Defendants argue that Louisiana has "a strong public policy interest in regulating non-competition provisions that purport to bind its citizens." (D.I. 30 at 11). In response, Plaintiff contends that this factor weighs against transfer because "Delaware 'encourages the use by Delaware corporations of Delaware as a forum for the resolution of business disputes.'" (D.I. 38 at 13 (quoting *IpVenture, Inc. v. Acer, Inc.*, 879 F. Supp. 2d 426, 433 (D. Del. 2012))). Given the competing public policies of the two districts, the Court will treat this factor as neutral.

8

6. Familiarity of the trial judge with the applicable state law in diversity cases

This factor weighs against transfer. The parties dispute which state's law should apply – Defendants argue that this case is governed by Louisiana law, whereas Plaintiff asserts that Delaware law governs, given the parties' choice-of-law clauses. (*See* D.I. 30 at 14; D.I. 38 at 14). The Third Circuit has acknowledged "that it is only in rare circumstances that Delaware courts do not honor the choice-of-law provisions agreed to by parties in a binding contract." *Coface*, 430 F. App'x at 166 (citing *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1048 (Del. Ch. 2006) ("When parties have chosen a state's contract law to govern their contract, it is illogical to assume that they wished to have the enforceability of that contract judged by another state's law.")). "In determining whether [a] choice-of-law provision[] will apply, Delaware Courts have consistently applied § 187 of the Restatement (Second) of Conflicts of Laws." *Sensus USA, Inc. v. Franklin*, No. 15-742 (RGA), 2016 WL 1466488, at *2 (D. Del. Apr. 14, 2016). Section 187 provides that a choice-of-law clause will be enforced unless either:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2) (1971).

As an initial matter, the parties do not seem to dispute that the first exception does not apply. Defendants do not address it in their papers and Plaintiff discusses it only briefly. (*See* D.I. 38 at 16). Nonetheless, the Court finds that the first exception does not apply here. "The Third Circuit has held that Delaware has a substantial relationship to a transaction when it is the location where one of the transacting parties is incorporated." *Sensus*, 2016 WL 1466488, at *3

9

(citing *Coface*, 430 F. App'x at 167). Plaintiff is a Delaware limited liability company and is organized under the laws of Delaware, thus creating a substantial relationship with Delaware. *See Coface*, 430 F. App'x at 167 ("When parties choose to form a Delaware entity and utilize Delaware's systems of law and dispute resolution, they are bargaining for a valuable array of reliable services relating to their entity's internal affairs." (internal quotation marks omitted)). Moreover, "the existence of a choice-of-law clause establishes a material relationship between the chosen state and the transaction." *Change Capital Partners Fund I, LLC v. Volt Elec. Sys., LLC*, No. N17C-05-290 (RRC), 2018 WL 1635006, at *5 (Del. Super. Ct. Apr. 3, 2018); *see also* 6 Del. C. § 2708 (providing that a choice-of-law clause is "presumed to be a significant, material and reasonable relationship with [Delaware] and shall be enforced whether or not there are other relationships with [Delaware]"). Thus, because a substantial relationship with Delaware exists here, the Restatement's first exception does not apply.

As for § 187's second exception, Defendants assert, and Plaintiff does not dispute, that Louisiana law would govern the parties' agreements, absent the parties' choice-of-law clauses. (*See* D.I. 30 at 17). Thus, the only issue for the Court to decide is whether Louisiana has a "materially greater interest" than Delaware. Given the Third Circuit's holding in *Coface*,[3] the

---

[3] Defendants contend that "there have been significant developments in Delaware state jurisprudence that have clarified this area of law, rendering the *Coface* decision obsolete." (D.I. 44 at 5). For support, Defendants cite to *Cabela's Ltd. Liability Co. v. Wellman*, No. 2018-0607 (TMR), 2018 WL 5309954 (Del. Ch. Oct. 26, 2018) and *Ascension Insurance Holdings, LLC v. Underwood*, No. 9897 (VCG), 2015 WL 356002 (Del. Ch. Jan. 28, 2015), in which the courts found that a "state's *specific* interest in regulating non-compete provisions is 'materially greater' than Delaware's *general* interest in freedom of contract." (*Id.* at 6 (emphasis in original)). Although Defendants' representation of these cases' holdings is accurate, these cases do not address *Coface* or the Delaware state jurisprudence on which *Coface* relies. Thus, the Court is not convinced that the Third Circuit's holding in *Coface* is obsolete. Moreover, these cases are distinguishable from *Coface* and the instant case. The *Cabela's* and *Ascension* courts concluded that the alternative state's specific interest outweighed Delaware's general interest after

Court finds that it does not. In *Coface*, the parties disputed whether the second exception of § 187 applied, such that Louisiana law would govern the parties' dispute regarding a non-competition clause. 430 F. App'x at 167. In "asking whether Louisiana ha[d] a 'materially greater interest' in the particular issue at hand – determining the effect of the non-compete clause – than Delaware," the Third Circuit determined that it did not. *Id.* Although Louisiana had a "substantial interest in the issue of whether the covenant not to compete should be enforced" because the defendant was a Louisiana citizen, he signed the agreement in Louisiana, and his allegedly completing business was headquartered in Louisiana, the Third Circuit found that "these geographical contacts d[id] not support the conclusion that Louisiana ha[d] a 'materially greater interest'" than Delaware. *Id.* at 168. In coming to its conclusion, the Third Circuit relied on the fact that the case was not solely between Louisiana citizens as well as the plaintiff's status as a Delaware corporation. *Id.* Moreover, the Third Circuit held that "Delaware ha[d] a substantial interest in enforcing this voluntarily negotiated contract clause that explicitly designate[d] Delaware law to govern. That interest [wa]s not overcome by any other state's materially greater interest." *Id.* (citing *Abry Partners*, 891 A.2d at 1049-50).

Like *Coface*, the Court finds that § 187's second exception does not apply here. Although Defendants are Louisiana citizens and events surrounding the parties' agreements occurred in Louisiana, the Court finds these geographical contacts are insufficient to show that Louisiana has a "materially greater interest" than Delaware. *See Coface*, 430 F. App'x at 168; *Sensus*, 2016 WL 1466488, at *4 (finding Georgia did not have a "materially greater interest" than Delaware, despite Georgia's geographical contacts to the parties' dispute). This is not a case between Louisiana

---

determining that the alternative state had a stronger, overall interest because all parties resided in that state. *See Cabela's*, 2018 WL 5309954, at *8; *Ascension*, 2015 WL 356002, at *5. In the instant case, as well as in *Coface*, the parties do not all reside in Louisiana.

11

citizens – Plaintiff is a Delaware entity, is headquartered in Georgia, and operates throughout the United States. (*See* D.I. 38 at 3). Moreover, "[t]he parties voluntarily negotiated the contract clause expressly designating Delaware law to govern any disputes" and "Delaware has a fundamental interest in allowing its citizens to use its law as a commercial lingua franca to transact business across borders." *Sensus*, 2016 WL 1466488, at *4. Thus, the Court finds that Defendants have not shown that Louisiana has a "materially greater interest" than Delaware.[4] The Court will enforce the parties' choice-of-law clauses and will apply Delaware law to the parties' dispute.

Because Delaware law governs the parties' dispute and this Court is more likely to be familiar with Delaware law than the Louisiana court, this factor weighs against transfer.

       7.      <u>Balancing the public factors</u>

In sum, five factors are neutral, one factor weighs against transfer, and no factors weigh in favor of transfer. Because the parties' contracted choice of forum should only be disturbed if the public interest factors "overwhelmingly weigh against enforcing the [forum-selection] clause[]," *In re Howmedica*, 867 F.3d at 409, Defendants' motion to transfer is denied.

## IV. **CONCLUSION**

For the foregoing reasons, the Court denies Defendants' motion to transfer the case to the United States District Court for the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a). An appropriate order will issue.

---

[4] Because Defendants have not shown that Louisiana's interest is "materially greater than" Delaware's interest, the Court need not reach the question of whether enforcing the parties' non-competition and non-solicitation clauses would violate a "fundamental policy" of Louisiana. *See Coface*, 430 F. App'x at 168; *Sensus*, 2016 WL 1466488, at *4.